Dye, J. (dissenting).
I dissent and vote to reverse and to grant a new trial upon the ground that the shipper was bound by the terms and conditions of the uniform express receipt which it had accepted. The shipper, ‘ ‘ because it had its own insurance ”, had declared the shipment was valued at $50,
*108 The Interstate Commerce Act condemns discrimination in rates and the giving of preferences to any shipper (U. S. Code, tit. 49, §§ 2, 3, snhd. [1]). Subdivision (11) of section 20, enacted as a part of the statutory scheme to curb such sharp practices, makes carriers liable for actual losses sustained, subject to exceptions authorized in writing by the Interstate Commerce Commission. Because the currently effective tariff schedules did not allow a choice of rates to be given with respect to shipments of crude platinum, the majority are now holding that the carrier must bear liability for the full value of the shipment.
Railway Express Agency, Inc., had no knowledge of the actual value of this shipment; it had knowledge only of the value stated by the shipper’s agent. Mistakenly, it relied upon the value declared. Indeed, for all it knew, the value did not exceed $50. For the delivery of crude platinum, the shipper was thus able to obtain a rate based on a merchandise classification, thereby realizing a saving of $128.03.
No one would contend that the statute creates responsibility for the actual value of loss where the carrier has been deceived as to the contents of a shipment. The entire act opposes any such concept of liability. In the present ease, which essentially is not very different, there is no doubt of the carrier’s obvious good faith in receiving the package and in charging a rate commensurate with the value as represented. There was no intent to circumvent the clear requirements of the Interstate Commerce Act. The case of New York & Honduras Rosario Min. Co. v. Riddle Airlines (3 A D 2d 457, affd. 4 N Y 2d 755) is, therefore, not persuasive, for there the shipment was knowingly and willfully made in violation of the published tariff rate; the carrier knew the actual value of the shipment," yet deliberately undertook to carry it for less than the applicable rate.
Holding a carrier strictly accountable for the actual loss, on such a showing as this, opens wide the door to unconscionable practices, and does nothing to serve the useful and sound public policy expressed by the Interstate Commerce Act.